## COTTON STATES FERTILIZER COMPANY *v.* CHILDS
*et al.*

No. 9856. MAY 24, 1934. REHEARING DENIED JUNE 16, 1934.

*Gilbert C. Robinson* and *J. S. Averill Jr.,* for plaintiff.
*Felton & Felton,* for defendants.

BELL, J. Cotton States Fertilizer Company brought a suit against M. H. Childs and Mrs. Childs, husband and wife, to recover a judgment against the husband on a note and to cancel a deed from the husband to the wife as being a mere voluntary conveyance which rendered the husband insolvent, or, if based upon a valuable consideration, as having been made with intent to hinder, delay, or defraud the plaintiff and other creditors, the wife being aware of such intention or having reasonable ground to suspect the same. The defendants in their answer admitted that the husband was liable on the note, and that the deed had been executed as alleged, but denied the other allegations. They contended upon the trial that the deed was executed in payment of a debt due by the husband to the wife, and that, although the husband was thereby rendered insolvent, the transaction was attended with the utmost good faith, and was lawful under the rule that a debtor may prefer one creditor over another. The jury found for the defendants, and the plaintiff excepted to the overruling of its motion for a new trial. The motion was based on the general grounds and on several special grounds, in one of which error was assigned upon the refusal of a timely written request by the plaintiff to instruct the jury in the language of the Civil Code (1910), § 5749, that "Where a party has evidence in his power and within his reach, by which he may repel a claim or charge against him, and omits to produce it, or, having more certain and satisfactory evidence in his power, relies on that which is of a weaker and inferior nature, a presumption arises that the charge or claim is well founded; but this presumption may be rebutted." It is our opinion that the court erred in refusing to instruct the jury as requested; and in the view which we take of the case it is unnecessary to pass upon the other questions raised. Before discussing the law relating to the question to be decided, some additional facts should be stated.

Mrs. Childs, though a party defendant, did not attend the trial, and her depositions were not taken, the only evidence introduced

by the defendants being the testimony of Mr. Childs, the husband. He testified that his wife was "undergoing the change of life," and was of a "nervous disposition," and that although she was "up and about" he was "afraid to bring her to court." He further testified: The deed in question was made in payment of a loan in sum of $1800 which he obtained from his wife in June, 1917. He did not give his wife any note or other obligation in writing, but promised to pay interest at the rate of 8 per cent. per annum. The deed was made "for a consideration of $3500, which represents the principal of $1800 and interest." He did not intend to hinder or delay his creditors, but merely wanted to pay his wife what he owed her. He has no written evidence showing the receipt and disbursement of the $1800 loaned by his wife, except one check in the sum of $183.50, with which he paid for repairs upon his house. The money which he obtained from his wife was inherited by her from an aunt, and was received by her and delivered to the witness in currency. The witness purchased 500 acres of land in 1907, for which he paid $1815, and purchased 67½ acres in 1925, for which he paid $4000. All of these lands were conveyed by the deed which is now in controversy. At the time of making this deed, in October, 1931, the witness owed the debt sued on in this case, and another debt which he mentioned as amounting originally to $1000, but on which something had been paid. He did not "recall" other debts that he owed at that time, but stated that "he owed considerable money." The making of this deed and the transferring of certain personal property with it left him without owning any property of any kind whatsoever. All of the personalty on the farm, including certain cattle, he gave to his wife at the time he made the deed to her. He turned everything over to her in payment of what he owed her. He "never made a delivery of the lands or any part of the property" to his wife, but kept all of it and managed it for her. The tract of 67½ acres was called the Oates place. Before purchasing this place for $4000 in 1925, the witness did not offer to repay his wife what he owed her, and he did not suggest to her that the Oates place be put in her name at that time. Other testimony of this witness was as follows: "I have made considerable money during the years since I made this loan from my wife, and up to two or three years ago I could have paid back this loan several times; but I never at any time offered to repay the same,

and my wife has never demanded that I pay her. She did not demand that I pay her at any time before I made her a deed, and did not ask me to make a deed to her conveying this property on October 9, 1931. I have given my wife money during all of the years since I made the loan, but I do not recall any single amount, nor could I estimate how much I have given her. Nothing was said about this money being applied on what I owed her. I have no written evidence of where this $1800 my wife loaned me came from, and no written evidence of its disbursement except the check as previously testified. Out of all checks produced under your notice, I can not tell whether paid out of this exact money. I did not give my wife a note or any other written evidence of the $1800. The lands I conveyed to my wife on October 7, 1931, were free from any liens or encumbrances. The land and personalty I conveyed to my wife was worth much less than I owed her."

The plaintiff introduced evidence to the effect that on December 11, 1931, M. H. Childs obtained an extension of the obligation now sued on, and pledged as collateral a rent note from a tenant for the following year for a part of the lands which he had previously conveyed to his wife, which note was made payable to himself; and that he executed to the plaintiff, as further security, a mortgage on three cows which he had previously given to his wife, but which, together with the rent note, he warranted to be his own property, "free from all liens and encumbrances." It was also in evidence that M. H. Childs did not tell the plaintiff that he had conveyed all of his property to his wife, at the time of obtaining the extension agreement and of giving the additional security.

In the foregoing circumstances, it was error to refuse to charge the principle stated in the Civil Code of 1910, § 5749. It may be conceded that this principle can not be safely given as a charge except in a very limited class of cases (*Bank of Emanuel* v. *Smith,* 32 *Ga. App.* 606, 124 S. E. 114, and cit.) ; but it can not be said to be improper in all cases, and this is one of the cases in which it would have been appropriate. Such a charge has been affirmed in other cases as follows: *Fountain* v. *Fuller E. Callaway Co.,* 144 *Ga.* 550 (2) (87 S. E. 651) ; *Moye* v. *Reddick,* 20 *Ga. App.* 649 (2) (93 S. E. 256) ; *Blanchard* v. *Ogletree,* 41 *Ga. App.* 4 (3) (152 S. E. 116).

It is true that "a debtor may prefer one creditor to another"

(Civil Code of 1910, § 3230), and that under this rule a husband who is indebted to his wife may convey property to her in preference to other creditors; but this rule is subject to the qualification that the conveyance must be made only for the purpose of paying or securing his wife as a creditor, and not be tainted with any intention to hinder, delay, or defraud others, such conveyance being judged by the intention with which it is made and accepted, and not by its consideration or effect. *Conley* v. *Buck,* 100 *Ga.* 187 (2), 206 (28 S. E. 97); *Monroe Mercantile Co.* v. *Arnold,* 108 *Ga.* 449, 459 (34 S. E. 176); *Bigby* v. *Warnock,* 115 *Ga.* 385, 389 (41 S. E. 622, 57 L. R. A. 754); *Cowan* v. *Bank of Rockdale,* 159 *Ga.* 123 (4), 126 (125 S. E. 194). It is also the law that when a transaction between husband and wife is attacked for fraud by the creditors of either, the onus is on the husband and wife to show that the transaction was fair. Civil Code (1910), § 3011. This is a burden which is placed on both the husband *and* the wife and does not rest upon the husband alone. While an absolute conveyance from a husband to a wife for a valuable consideration will not be set aside at the instance of a creditor upon the ground of fraud unless the wife knew of the fraud or had "ground for reasonable suspicion" thereof (Civil Code of 1910, § 3224, par. 2), the burden is not upon the creditor, as in other cases, to prove the fraudulent scheme. In *Gill* v. *Willingham,* 156 *Ga.* 728 (9) (120 S. E. 108), this court held as follows: "In a claim case where the wife sets up title to the property levied upon under a deed from her husband, and his creditor attacks the same upon the ground that it is a fraudulent conveyance, intended to hinder, delay, and defraud such creditor, the law does not put upon the creditor the burden of establishing fraud in the conveyance. On the contrary, it puts the burden upon the husband and wife. They must show that the transaction as a whole is free from fraud." See also *Gray* v. *Collins,* 139 *Ga.* 776 (78 S. E. 127); *Davie* v. *Tanner,* 150 *Ga.* 770 (2) (105 S. E. 355); *Simmons* v. *Realty Investment Co.,* 160 *Ga.* 99 (2) (127 S. E. 279); *McLain* v. *Georgia State Bank,* 164 *Ga.* 699 (139 S. E. 527). The principle stated in the Civil Code, § 3011, appears to have been taken from the decision in *Richardson* v. *Subers,* 82 *Ga.* 427 (9 S. E. 172), where the burden was referred to as being upon the *wife.* In *Booher* v. *Worrill,* 57 *Ga.* 235, there was a strong intimation that the wife should be heard from, or

her failure to testify should be explained. In *Reese* v. *Shell,* 95 *Ga.* 749 (22 S. E. 580), it was claimed that property purchased by the husband was conveyed to his wife because she had advanced a small part of the purchase-money. The transaction was attacked by a creditor of the husband; and it was said by this court that the "burden was upon her to show clearly that she acted in good faith, and that she was not only ignorant of, but had no grounds for reasonable suspicion as to, the husband's fraudulent intent." In the present case the jury could have found from the evidence that the property conveyed to the wife was worth considerably more than the debt which the husband claimed to owe to her, notwithstanding his evidence to the contrary.

Furthermore, the jury were not bound to find from the testimony of the husband alone that such a debt really existed (*Whiddon* v. *Hall,* 155 *Ga.* 570 (6) (118 S. E. 347), and testimony from the wife would have been a most pertinent matter for their consideration. Cf. *Booker* v. *Worrill,* 55 *Ga.* 332. In *Capital Bank of Macon* v. *Rutherford,* 70 *Ga.* 57, it was said: "Nothing is better settled than that where facts are charged to be within the knowledge of a party, or where from all the circumstances such knowledge is necessarily presumed, and he either fails to answer altogether or makes an evasive answer, the charge is to be taken as true." In *Strickland* v. *Jones,* 131 *Ga.* 409 (3) (62 S. E. 322), it was held that the fact that the alleged debt was barred by the statute of limitations was a circumstance which could be considered by the jury on the question of fraud. In *Hoffer* v. *Gladden,* 75 *Ga.* 532 (4), it was said: "To sell or mortgage his entire property by an insolvent debtor pending suit is a badge of fraud, and to do so in an unusual mode differing from the manner in which such business is generally transacted, to the extent that suspicion would be excited that the transaction was unfair, is . . a badge of fraud." It was further said in that case that "Failure to produce testimony is a badge of fraud, where the bona fides of the transaction is in issue, and witnesses who ought to be able to explain it are in reach." In *Wood* v. *Wilson,* 145 *Ga.* 256 (88 S. E. 980), it was held "admissible to show that the defendant, since deceased, who was present at a former trial and competent as a witness, failed to testify concerning the transaction in issue, of which he had peculiar knowledge; the bona fides of which was attacked by the plaintiffs." The

evidence in the present case did not demand a finding that the wife could not have attended the trial and testified as a witness in her own behalf, much less that her depositions could not have been taken and introduced in evidence. If the deed was made with fraudulent intent, did the wife have knowledge of this fact or reasonable ground to suspect the same? The person best qualified to answer this question was the wife grantee. As to this question, if not also as to others, the jury could have inferred that these defendants had evidence within their power and reach by which to repel the claim or charge against them and omitted to produce it, or that having more certain and satisfactory evidence, to wit, the evidence of the husband *and* wife, relied on that which was of a weaker and inferior nature,—the testimony of the husband alone. In such a case, says the Code, the presumption arises that the charge or claim is well founded. It has been said, however, that this presumption is not one of law, but is one of fact. *Brothers* v. *Horne,* 140 *Ga.* 617 (3) (79 S. E. 468). Even so, where a stated set of circumstances will demand a particular inference, it is not error for the court to instruct the jury to that effect, provided the question of whether the circumstances do in fact exist is left open for determination by the jury. The charge as requested in this case would have left the jury to determine whether or not there existed the state of facts from which the presumption would arise, and would not have invaded the jury's province. The judges frequently instruct the jurors that if they find a stated set of facts to exist, they should reach a certain conclusion; and such instructions are not improper where authorized by the evidence, and where the facts, if found as indicated, could not reasonably point to any other conclusion.

Counsel for the defendants rely upon the following cases: *Thompson* v. *Davitte,* 59 *Ga.* 472 (7); *Ward* v. *Morris,* 153 *Ga.* 421 (5) (112 S. E. 719); *Cocroft* v. *Cocroft,* 158 *Ga.* 714 (5) (124 S. E. 346). The *Thompson* case, supra, is distinguished from the case at bar in several points: (1) It did not involve a transaction between husband and wife, attacked by a creditor as fraudulent, so as to shift the onus. (2) The charge as requested in that case was stronger against the opposite party than in the present case. (3) Since the decision in that case, the principle which the court was here requested to charge has been adopted by the legislature as a

part of the Code law of this State. It was carried in the Civil Code of 1895 as § 5163, but did not appear in the earlier Codes. The Codes of 1895 and 1910 were both adopted by the legislature as the law of Georgia. *Hall* v. *Jeffreys-McElreath Co.,* 37 *Ga. App.* 581 (140 S. E. 910), and cit. Furthermore, while the soundness of the conclusion reached in the *Thompson* case is not questioned, some language in the opinion appears to have been broader than the facts there under consideration, and is susceptible of misapplication in cases of a different character. The author of the opinion in that case was the same learned jurist who had remarked about the absence of both the husband and the wife as witnesses in the previous case of *Booher* v. *Worrill,* supra. The ground of difference first stated with reference to the *Thompson* case will apply also to the case of *Ward* v. *Morris,* supra.

The *Cocroft* case, supra, was a suit for divorce, and the burden was upon the plaintiff to prove the allegations of his petition. The onus did not rest upon the defendant, as was true of the defendants here with respect to the most important issue. Nor could it be said that the defendant in that case had evidence within her power and control which she did not produce. We also call attention to a decision in *Stephenson* v. *Meeks,* 141 *Ga.* 561 (2) (81 S. E. 851), which related to the same subject, but which did not involve a transaction between husband and wife. The charge dealt with in *Weinkle* v. *Brunswick & Western R. Co.,* 107 *Ga.* 367 (4) (33 S. E. 471), was materially different from the charge here requested; also, some of the language of the opinion in that case was obiter.

The origin of the present Civil Code section 5749 is stated in *Mills* v. *State,* 133 *Ga.* 155 (5) (65 S. E. 368). Since the principle therein stated has been adopted as a part of the Code, it evidently means something as a rule of law. It was hardly enacted as a guide only for the appellate courts in determining whether verdicts are authorized, or for the purpose of suggesting a ground of argument for counsel.

We have given extended consideration to the question presented in the instant case, because it is one of difficulty as well as frequent controversy, the prime object of this discussion being, however, to solve correctly the case before us. Any previous doubt as to whether the principle alluded to can ever be given as an instruction ought to be relieved to some extent by its adoption as a part of the Code

law of this State. Nothing said herein is to be construed as implying its applicability only in relation to transactions between husband and wife. Each case must stand upon its own particular facts, and the facts and circumstances must authorize the inference that a party "had evidence in his power and within his reach by which he may repel a charge or claim against him and omits to produce it," or, "having more certain and satisfactory evidence in his, power," he "relies on that which is of a weaker and inferior nature," before the jury should be told of any "presumption." Compare 10 R. C. L. 884 et seq. We repeat that the statement can be given in charge only in exceptional cases, and the greatest caution must be exercised in its application. In this case the court erred in not charging the jury as requested.

*Judgment reversed. All the Justices concur, except Russell, C. J., absent because of illness.*